UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **BETTY BROUILETTE BONANO** | **15-12009** |
| | SECTION A |
| DEBTOR | CHAPTER 7 |
| | |
| **ARITA M. L. BOHANNAN** | ADVERSARY NO. |
| | **15-1077** |
| PLAINTIFF | |
| VERSUS | |
| **BETTY BROUILETTE BONANO** | |
| DEFENDANT | |

## MEMORANDUM OPINION

Betty Brouilette Bonano ("Debtor") filed a petition for relief under Chapter 7 of the Bankruptcy Code on August 10, 2015,[1] and received a discharge on January 14, 2016.[2] Anita M.L. Bohannan ("Bohannan") filed a Complaint to Determine Dischargeability of Debt on November 16, 2015.[3] On June 17, 2016, the Court conducted a trial on the merits, following which the matter was taken under advisement. The Court having considered the pleadings, evidence presented, and arguments of counsel, issues the following Memorandum Opinion.

**I. FACTS**

Bohannan, an attorney specializing in family law, was hired by Debtor to represent her in a divorce action pending in the Twenty-Fourth Judicial District Court, Parish of Jefferson, State of

---

[1] Main case pleading 1.

[2] Main case pleading 16.

[3] Adversary proceeding pleading 1.

Louisiana, *Derrick J. Bonano v. Betty Ann Brouilette Bonano*, Number 696-236. On December 23, 2010, the parties entered into a Fee Agreement pursuant to which Debtor provided Bohannan with a $2,500.00 retainer.[4]

As the divorce case proceeded, the initial retainer fee was exhausted and Debtor owed Bohannan money. In March, 2012, Debtor and Bohannan entered into a Payment Contract. As evidenced by her signature on the contract, Debtor agreed:

> [T]o pay the sum of $5,387.00 currently due Bohannan, Rogers & Associates for legal fees, legal representation and court costs associated with my legal case currently being heard in the 24th Judicial District Court of Jefferson Parish No. 696-236. I also agree to pay any additional fees relative to this matter incurred after the date of this notice.
>
> [T]o pay this debt in full no later than 10 (ten) business days after the above legal matter settles.[5]

The divorce proceeding was settled on August 17, 2012, when a Stipulated Consent Judgment was signed by the state district judge, along with Debtor and her former husband, Derrick J. Bonano, and their respective counsel. Under the terms of the consent judgment, Debtor received: 1) a 2003 Chevrolet Tahoe with an approximate value of $7,850.00; 2) a Capital One IRA with an approximate balance of $3,005.45; 3) a Capital One Mutual Fund with an approximate balance of $2,942.78; 4) a fifty percent (50%) share of a Capital One "Renovation Account" with an approximate balance of $1,626.00; 5) a fifty percent (50%) share of a Bank of America escrow account with a total sum on deposit of $2,159.00; and, 6) a payment of $10,890.00 representing Debtor's one-half (½) community interest in a Certificate of

---

[4] Exhibit iii.

[5] Exhibit iv.

Deposit. Further, under the terms of the agreement Debtor was to receive, upon the refinancing of the family home, an additional cash payment of $72,000.00.[6] Bohannan agreed that Debtor could wait to pay her legal bill until she received her $72,000.00 cash settlement.

Upon learning that the refinancing had been accomplished, on September 21, 2012, Bohannan sent Debtor an email inquiring as to how the closing had gone and reminding Debtor of her legal bill. In response, Debtor emailed that although the closing went fine she had not received her $72,000.00 check. Debtor assured Bohannan that she did not need to be anxious about the bill, that Debtor was "not that kind of person."[7] However, after receiving the funds two to three weeks following the closing, in October, 2012, Debtor did not pay her legal bill.

On December 5, 2012, a Petition on Open Account, *Bohannan, Rogers & Associates, L.L.C. v. Betty Ann Brouilette Bonano*, Number 153958, was filed in the First Parish Court, Parish of Jefferson, State of Louisiana.[8] As evidenced by Bohannan and Associates "Detail Transaction File List," Debtor incurred an obligation of $19,908.98 for Bohannan's legal services, paid Bohannan $10,779.95, leaving a balance of $9,129.03.[9] After much delay,[10] the matter was set for trial and the week the trial was scheduled to commence, Bohannan was served with Debtor's bankruptcy petition.

---

[6] Exhibit v.

[7] Exhibit vi.

[8] Exhibit vii.

[9] Exhibit viiB.

[10] Bohannan attributed some of the delay to the fact that there were multiple unsuccessful attempts to serve Debtor. Thereafter, once service had been accomplished, Debtor hired a procession of counsel to represent her.

3

On her bankruptcy schedules, Debtor declared under penalty of perjury that she no longer had any of the cash obtained following the dissolution of her marriage. Debtor testified that following the dissolution of her marriage, her life took a downward plunge. She stated that for a period she gave up custody of her two children and hit the streets, often sleeping in her car, sometimes in motels, drinking to excess and spending money. She stated that she had no job skills, having worked in the home raising her children during her marriage, and eventually enrolled in school to become a Certified Nursing Assistant. She ultimately obtained a job earning $10.00 per hour, she rented an apartment and got her children back. The money she obtained following her divorce was used to supplement her salary, covering medical needs, veterinary care, school tuition, along with living expenses such as food and rent.

Debtor testified that her Tahoe vehicle was stolen in January, 2014, following which she closed out her bank accounts because her bank account information was contained in the vehicle. Debtor estimated that she had approximately $24,000.00 left in her accounts at that time, but by the end of 2014, the money was gone.

In connection with Bohannan's collection effort, Debtor obtained counsel who, on June 11, 2015, filed an Answer on her behalf, including affirmative defenses questioning various billing entries.[11] At that point, Debtor had no money and the counsel who represented her was not paid. Debtor stated that she is not paying counsel for representing her in connection with the instant adversary proceeding and that she used her tax refund to pay the fees associated with her bankruptcy filing.

---

[11] Exhibit Bi - Docket Sheet for Case Number 153958, entry 54.

Debtor testified that in March, 2012, when she signed the payment agreement with Bohannan, she intended to pay Bohannan from her divorce settlement proceeds. She further stated that when she received the proceeds in October, 2012, she intended to pay Bohannan. Nevertheless, she used the funds to pay other obligations.

## II. LAW AND ANALYSIS

Bohannan argues that her claim against Debtor should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A). § 523(a)(2)(A) provides in pertinent part that a debtor is not discharged from a debt for services to the extent obtained by "false pretenses, a false representation, or actual fraud...." A creditor must prove his claim is not subject to discharge by a preponderance of the evidence.[12]

In defining the elements necessary to establish a claim is non-dischargeable under § 523(a)(2)(A), courts "have distinguished between actual fraud on the one hand, and false pretenses and representations on the other."[13] In order for a debtor's representation to be a false representation or false pretense under § 523(a)(2), "the false representations and false pretenses [must] encompass statements that falsely purport to depict *current or past facts*. [A debtor's] promise...related to [a] *future action* [which does] not purport to depict current or past fact...therefore cannot be defined as a *false representation or a false pretense*."[14] Just because a debtor is not able to live up to a promise,

---

[12] *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (establishing preponderance of the evidence burden for objection to discharge).

[13] *RecoverEdge, L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995) (citations omitted).

[14] *Matter of Bercier*, 934 F.2d 689, 692 (5th Cir. 1991) (quotation omitted) (emphasis original). *See also In re Boese*, 8 B.R. 660, 662 (Bankr. D. S.D. 1981) ("In order to prevail under 11 U.S.C. § 523(a)(2)(A), a creditor must prove that a debtor knowingly and fraudulently made false representation to the creditor in order to obtain the creditor's money. Subsequent conduct contrary to a former representation by debtor does not necessarily establish the original representation to have been false.")

does not mean that the debtor has necessarily made a false representation.[15] In contrast, the actual fraud component of § 523(a)(2) is satisfied "when a debtor makes promises of future action which, *at the time they were made*, he had no intention of fulfilling."[16] This requires a subjective evaluation of a debtor's state of mind. A debtor's intent is determined by looking at the totality of the circumstances with exceptions to discharge strictly construed against the creditor.[17]

In this case, Debtor's promise related to future action as she promised to pay for Bohannan's legal services ten (10) days after her divorce action settled. Debtor's promise in this regard did not purport to depict current or past fact and, as such, does not constitute a false representation or false pretense for purposes of establishing dischargeability under § 523(a)(2)(A).[18]

For purposes of showing that Debtor obtained her legal services by actual fraud, Bohannan has the burden of proving that when Debtor promised to pay her at a later date, Debtor had no intention of fulfilling the promise. The Court finds that Bohannan has not satisfied her burden of proof. Debtor testified under oath that she intended to pay Bohannan when she signed the payment agreement in March, 2012. Debtor also testified that she intended to pay Bohannan when she emailed her regarding the closing. Debtor did not anticipate the downward spiral her life would take following the dissolution of her marriage of more than twenty (20) years. The fact that Debtor did

---

[15] *In re Acosta*, 406 F.3d 367 (5th Cir. 2005); *In re Sutton*, 324 B.R. 624 (Bankr. W.D. Ky. 2005).

[16] *Matter of Bercier*, 934 F.2d at 692 (quotation omitted) (emphasis original).

[17] *In re Stinson*, 364 B.R. 269, 275 (Bankr. W.D. Ky. 2007), *citing*, *In re Rembert*, 141 F.3d 277, 280-81 (6th Cir. 1998).

[18] Of note is the fact that Bohannan could have taken steps to ensure the enforceability of her March, 2012 contract with Debtor. Pursuant to the provisions of LSA-R.S. 37:218, counsel may contract for the payment of his or her fees from a future settlement. Counsel, however, is obliged to file and record the contract with the clerk of court where the action is pending or the clerk of court where the client is domiciled. After such a filing, any settlement of the action by the client without the written consent of the attorney, "is null and void" and the action shall proceed as if no settlement had been reached.

6

not live up to her promise to pay Bohannan the money owed, does not mean she had no intention of doing so when the promise was made.

Bohannan also claims the debt owed to her is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). "Section 523(a)(2)(B) provides that certain debts obtained by a false statement in writing . . . respecting the debtor's financial condition are non-dischargeable."[19]

For a statement to be "in writing," it must have been "written by the debtor, signed by the debtor, or written by someone else but adopted and used by the debtor."[20] For the writing to be "respecting the debtor's financial condition," it must connote the debtor's overall net worth. As the United States Fifth Circuit Court of Appeals explained:

> [T]he phrase "a statement respecting the debtor's or an insider's financial condition" as used in § 523(a)(2) was meant to embody terms commonly understood in commercial usage rather than a broadly descriptive phrase intended to capture any and all misrepresentation that pertain in some way to specific assets or liabilities of the debtor. The term "financial condition" has a readily understood meaning. It means the general overall financial condition of the entity or individual, that is, the overall value of property and income as compared to debt and liabilities.[21]

In this case, the March, 2012 payment contract[22] and Debtor's September 21, 2012 email[23] are the only writings concerning Debtor's obligation to pay Bohannan's bill. Neither document makes any reference to Debtor's overall financial condition. Thus, neither serve as a basis upon which to except from discharge the debt at hand.

---

[19] *In re Bandi*, 683 F.3d 671, 673 (5th Cir. 2012).

[20] 4 *Collier on Bankruptcy* ¶ 523.08[2][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[21] *In re Bandi*, 683 F.3d at 676.

[22] Exhibit iv.

[23] Exhibit vi.

Bohannan also cites 11 U.S.C. § 523(a)(2)(C) in support of her claim that the debt at issue is non-dischargeable. § 523(a)(2)(C) provides, in pertinent part, that consumer debts owed to a single creditor and exceeding $650 for services incurred by an individual debtor on or within 90 days before the order for relief are presumed to be dischargeable.

In the instant matter, Bohannan's legal services were incurred by Debtor prior to December 5, 2012, the date Bohannan instituted legal proceedings to collect the amount owed by Debtor. Debtor filed her petition for relief under Chapter 7 of the Bankruptcy Code over two (2) years later, on August 10, 2015. § 523(a)(2)(C) cannot be utilized to except the debt at issue from discharge.

Finally, Bohannan seeks to utilize 11 U.S.C. § 523(a)(6) as a basis to render the debt non-dischargeable. § 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

In determining the scope of the exception encompassed by § 523(a)(6), one must dissect the meaning of the words, "willful and malicious injury." Confronting this pivotal question, the United States Supreme Court queried: "Does § 523(a)(6)'s compass cover acts, done intentionally, that cause injury . . . or only acts done with the actual intent to cause injury . . . ?[24] The Court ruled the latter to be the case, reasoning:

> The word "willful" in (a)(6) modifies the word "injury," indicating that non-dischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.,* "reckless" or "negligent," to modify "injury." Moreover, . . . the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself."

---

[24] *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998).

8

Restatement (Second) of Torts § 8A, Comment *a,* p. 15 (1964) (emphasis added).

[A] more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, *i.e.,* neither desired nor in fact anticipated by the debtor. Every traffic accident stemming from an initial intentional act—for example, intentionally rotating the wheel of an automobile to make a left–hand turn without first checking oncoming traffic—could fit the description. A knowing breach of contract could also qualify. A construction so broad would be incompatible with the "well-known" guide that exceptions to discharge "should be confined to those plainly expressed." *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915).[25]

While Debtor intentionally breached the contract she had with Bohannan, choosing to pay, among other things, child support, living expenses, and educational bills rather than her legal expenses, there is no evidence to suggest that Debtor intended to cause Bohannan injury by virtue of her actions.

A breach of contract, even if intentional, is not necessarily willful. As the Supreme Court has explained, "willful" acts are akin to intentional torts. Intentional torts require that the tortfeasor intend the <u>consequences</u> of the act not merely the act itself. If one considers the effect of Bohannan's interpretation of this statute, a bankruptcy discharge would almost always be eviscerated. In this Court's experience every debtor fails to pay debts he legally owes and overwhelmingly promised to pay. The mere failure to pay would render all of these debts non-dischargeable, placing the primary reason for filing beyond reach. For this reason, the mere failure to pay cannot be considered a willful act. Given the facts of this case, this Court does not find that Debtor acted to harm Bohannan rather that she simply did not pay by preferring to pay other obligations.

---

[25] *Geiger*, 523 U.S. at 61-62, 118 S.Ct. at 977 (citations and quotation omitted; emphasis original).

### III. CONCLUSION

For the reasons set forth above, the debt owed by Debtor to Bohannan is dischargeable. A separate Judgment will be entered in accord with this ruling.

New Orleans, Louisiana, June 27, 2016.

                              Hon. Elizabeth W. Magner
                              U.S. Bankruptcy Judge